UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT LEXINGTON

MARIA E,                          )
                                  )
      Plaintiff,                  )    Civil No. 5:17-cv-00-98-JMH
                                  )
V.                                )
                                  )
EXPERIAN INFORMATION              )    **MEMORANDUM OPINION & ORDER**
SOLUTIONS, INC.,                  )
                                  )
      Defendant.                  )

*** *** *** ***

In her Amended Complaint, Plaintiff Maria E avers that
Defendant "willfully and negligently failed to provide credit
information" and "willfully and negligently failed to conduct a
proper investigation . . . in violation of" the Fair Credit
Reporting Act ("FCRA"), 15 U.S.C. §§ 1681e(b), 1681i, and 1681g.
Defendant Experian Information Solutions, Inc. ("Experian"), has
filed a Motion for Summary Judgment [DE 27]. Plaintiff has filed
a Response [DE 32], stating her objections to the motion, and
Defendant has replied in further support of its Motion [DE 34].
For the reasons stated below, Defendant's Motion for Summary
Judgment will be granted in part and denied in part.

**I.**

Experian is a consumer credit reporting agency under the Fair
Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681(p), serving as a

conduit of information relevant to decisions regarding consumer credit and related matters. Essentially, Experian gathers credit information originated by others and makes that information available to parties engaged in credit related transactions. It stores, retrieves, and furnishes data under the auspices of the FCRA. Credit grantors report trade lines consisting of credit account information, including account number, account status, and balance information. Credit grantors also report consumer identifying information associated with the trade line. After Experian receives credit data but before adding it to a credit file, Experian reviews the information in various ways in its efforts to ensure that only accurate information will be reported for a given consumer.

Experian has extensive procedures for assuring the maximum possible accuracy of reported credit information. These procedures include: (1) verifying the accuracy of a consumer's identifying information; (2) working with credit grantors to ensure they supply the most complete and accurate data possible; (3) subjecting all incoming data to numerous systems and checks designed to prevent errors; (4) continually reviewing and refining Experian's computer systems in an ongoing effort to assure maximum possible accuracy of information Experian reports; and (5) working with consumers to proactively prevent errors in consumer credit reports.

Experian's credit reporting system does not store information on consumers in complete or assembled credit reports. Rather, the credit report is assembled at the time of an inquiry, using the identifying information provided by the inquiring party and comparing that information to the data in Experian's database. Experian has devised a system which accounts for the sometimes inconsistent manner in which consumers and data furnishers use or report identifying information (including parts of a name, typographical errors, etc.) by requiring a minimum of two letters for a consumer's surname length. Experian argues that this ensures sufficient information to provide a correct match when it receives an inquiry.

Experian's system did not, however, anticipate Plaintiff. She was born Maria Kalla and has had various married names over the years, including Moore and Morand, but changed her legal name to "Maria E." in 1992 when she divorced and, again, to "Maria E" on July 20, 2016. Over the years she has used her married names with respect to obtaining credit, among other purposes, and has periodically requested credit reports under those names. Most recently, she has used her legal name, "Maria E", for credit applications.

Plaintiff first contacted Experian to dispute the reporting (or lack of reporting) of her legal name in November 2008. In a

letter dated October 15, 2008, Plaintiff informed Experian that her legal name was "Maria E" and requested that her credit reports reflect that. Experian considered her request and responded, on November 17, 2008, that its database "does not support the use of a single name or a single initial for a surname."

Then, in 2016, Plaintiff began the process of establishing a good credit history so that she could purchase a home. Plaintiff had saved $10,000 and hoped to obtain a VA loan to finance the balance of the cost for a house. Recognizing that none of the three national credit bureaus were reporting credit information for her using her legal name, she set about to correct that.

For example, Plaintiff applied for a $1,000 installment loan through Forcht Bank in spring 2016 in order to establish a positive payment history, and her application was denied when the bank was unable to pull a credit report for Plaintiff through CBCInnovis. Plaintiff then obtained the loan, without submitting a second application after Trans Union and Equifax, the other major credit reporting agencies, began providing reports for her using her name, "Maria E" in the months that followed.[1]

---

[1] Plaintiff had other issues in her effort to establish credit, not all of which can be directly linked to Experian on the evidence presented to this Court but which reveal the uphill climb she was making toward obtaining credit and improving her credit history. For example, she applied for a mortgage with Veteran's United Mortgage Company in April 2016, through an online resource called Lending Tree. At that time, she did not have revolving credit and cannot recall whether this lender made its decision on the basis of an Experian credit report or its inability to pull an Experian credit report for Plaintiff. She

Although Plaintiff was able to secure corrections to her name in her file from TransUnion and Equifax, she was unable to do so with Experian, notwithstanding the fact that there is but one social security number associated with Maria E's credit file as it exists under her former names – her social security number.

In a July 4, 2016, letter she advised Experian that her legal name was "Maria E" and requested that Experian provide credit reports under that name. Experian wrote back, on July 19, 2016, advising her that its "database does not support the use of a single name or a single initial for a surname." Plaintiff wrote again on September 29, 2016, and October 7, 2016, reiterating her request. Experian responded both times that its "database does not support the use of a single name or a single initial for a surname." Plaintiff understood that Experian could not, with the system it was using, accommodate her request.

Plaintiff contacted the Consumer Financial Protection Bureau in October 2016. Experian responded to the complaint made through that process by responding that its "database does not support the

_____

also applied for a Meijer department store credit card in 2016 and was unable to open an account because she had failed to provide some personal information required under the USA PATRIOT Act in order to open the account. There was also a delay in approval of the $1,000 installment loan from Forcht Bank in spring 2016 because of credit reporting issues, but the evidence available to the Court on the present motion shows only that Forcht Bank requested a report through CBCInnovis – not Experian. Plaintiff would need to provide evidence showing CBCInnovis's connection to Experian and Experian's actions with respect to any reporting in that instance for such evidence to be relevant to her claims against Experian.

use of a single initial for a surname because single initial surnames do not provide sufficient identifying information to ensure a correct match" and that, because of its search and match logic, "[t]he request by the consumer to allow the display of a single character surname is not simply a formatting change," and explained that "[c]hanging the search and match logic to allow for single initial surnames could potentially have serious adverse effects on the credit reports of large numbers of other consumers because it would allow credit items to be matched to consumer files with insufficient identifying information."[2]

In December 2016, Plaintiff sought a mortgage to purchase a new home through Veterans United Home Loan through mortgage broker Pat O'Laughlin, but she was advised that she would not be able to obtain financing because O'Laughlin was unable to obtain a tri-merge credit report for her because there was no report from Experian.[3] After his request for a credit report for "Maria E" was

---

[2] Plaintiff also called Experian on several occasions disputing other information contained in her file and asking that her legal name be included. Each time, the Experian agent made it clear that "[s]he was not going to be able to get a credit report in [her] name." Plaintiff faced other difficulties in her interactions with Experian, including an allegation that Experian failed to send her information on her credit file when she contacted Experian on October, 20, 2016. She has affied that she requested a copy of her credit file disclosure during that call. Experian's record of that call does not indicate the topic of the discussion during that call but does not include a "CDI sent" note which its representative represented would indicate that a disclosure was requested and, the Court presumes, provided.

[3] Around the same time, Maria E called USAA to see what her insurance cost for a home would be so that she could establish her budget. Plaintiff declares that the USAA representative indicated that USAA uses Experian as their source for credit reports on insurance applications; that it could not obtain a report for

unsuccessful, O'Laughlin reached out to Experian to try to resolve the situation and, ultimately, made a request using her former name, Marian Morand, with Plaintiff's permission and per Experian's suggestion. Unfortunately, the report received using her former name did not include Plaintiff's more recently established credit history through two active, revolving accounts at USAA and an open and active installment account at Forcht Bank.[4]

O'Laughlin observed Plaintiff's frustration, humiliation, and embarrassment over her inability to obtain credit because she could not resolve the situation with Experian. Friends and acquaintances, including Wallace Barnes, Gregory Manley, John Grigsby, and John Huber, observed Plaintiff as she looked for a home to purchase and observed the physical and emotional impact that the intractable situation with Experian has had on her, corroborating her own claims that she became withdrawn; experienced frustration, tearfulness, and feelings of depression; and experienced and complained of headaches and stomach pain due to her experience with Experian.

---

"Maria E"; and that an application would be denied without a report. This is hearsay and, thus, inadmissible in this instance. Fed. R. Evid. 801 & 802.

[4] Experian's credit file for Plaintiff (using her former names) contains information from the past, including a closed, nine-year old Target National Bank account reported as "negative."

## II.

"The court shall grant summary judgment if the movant shows
that there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law." Fed. R. Civ.
P. 56(a). Initially, the burden is on the moving party to
conclusively show no genuine issue of material fact exists. *Leary
v. Daeschner,* 349 F.3d 888, 897 (6th Cir. 2003), and the Court
must view the evidence and draw all reasonable inferences therefrom
in the light most favorable to the nonmoving party. *Matsushita
Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587-88
(1986). However, the nonmoving party is not entitled to a trial
merely on the basis of allegations, but must come forward with
some significant probative evidence to support its claim. *Celotex
Corp. v. Catrett,* 477 U.S. 317, 324 (1986). If the nonmoving party
fails to make a sufficient showing on an essential element of its
case with respect to which it has the burden of proof, the moving
party is entitled to summary judgment. *Id.* at 323.

The Court determines whether sufficient evidence has been
presented to make the issue of fact a proper jury question, but
does not weigh the evidence, judge the credibility of witnesses,
or determine the truth of the matter. *Anderson v. Liberty Lobby,
Inc.,* 477 U.S. 242, 249 (1986); *Weaver v. Shadoan,* 340 F.3d 398,
405 (6th Cir. 2003). The standard for summary judgment mirrors the

standard for directed verdict. *Anderson,* 477 U.S. at 250. The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. There must be some probative evidence from which the jury could reasonably find for the nonmoving party. If the Court concludes a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Id.; Lansing Dairy. Inc. v. Espy,* 39 F.3d 1339, 1347 (6th Cir. 1994).

## III.

The FCRA creates a private cause of action, "[w]henever a consumer reporting agency prepares a consumer report" if it fails to "follow reasonable procedures to assure maximum possible accuracy" in preparing the consumer report. 15 U.S.C. § 1681e(b). A consumer report is defined, in relevant part, as:

> ...*any* written, oral, or other communication of *any* information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for— (A) credit or insurance to be used primarily for personal, family, or household purposes....

15 U.S.C. § 1681a(d)(1).

Thus, to succeed, Plaintiff must show that "(1) Experian reported inaccurate information about her; (2) Experian either negligently or willfully failed to follow reasonable procedures to assure maximum possible accuracy of the information about her; (3) she was injured; and (4) Experian's conduct was the proximate cause of her injury." *McComas v. Experian Info. Sols., Inc.*, No. 14-371, 2015 WL 4603233, at *3 (E.D. Ky. July 29, 2015) (citing *Nelski v. Trans Union, LLC*, 86 F. App'x 840, 844 (6th Cir. 2004)); *see also Swanson v. Cent. Bank & Trust Co.*, No. 5:03-255-JMH, 2005 WL 1324887, at *2 (E.D. Ky. June 3, 2005); *Smith v. LexisNexis Screening Sols., Inc.*, 76 F. Supp. 3d 651, 656 (E.D. Mich. 2014), *aff'd in part, rev'd in part*, 837 F.3d 604 (6th Cir. 2016)

Experian argues that Plaintiff cannot state a claim under § 1681e because she cannot simultaneously claim that no report is available and aver that Experian actually "prepared" or "provided" a consumer report for a third party which triggered its obligation to follow reasonable procedures. Defendant is playing coy, and the Court disagrees. While it is true that, "without a consumer report, there is no duty under the [FCRA] to follow reasonable procedures," *Smith v. First Nat'l Bank of Atlanta*, 837 F.2d 1575, 1578 (11th Cir. 1988), it is equally true that "[t]here is no consumer report unless there is a communication...for the purpose of serving as a factor in establishing the consumer's eligibility for credit or other statutorily enumerated purposes; i.e., there cannot be a

consumer report without disclosure to a third party." *Wantz v. Experian Info. Sols.*, 386 F.3d 829, 833–34 (7th Cir. 2004), *abrogated on other grounds by Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007). The Court accepts as a matter of law that such a statement made to a third party constitutes a communication and, specifically, a consumer credit report for the purposes of the FCRA where it bears on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living and was clearly expected to be used for the purpose of serving as a factor in establishing the consumer's eligibility for credit or insurance for her personal, family, or household uses. This means that even where the communication is that no report is available, a credit reporting agency must "follow reasonable procedures to assure maximum possible accuracy" of that statement.

In this instance, there is evidence from which a jury could reasonably conclude that Experian provided a communication to more than one requesting creditor that no report was available for "Maria E". In other words, there was a communication and a disclosure to a third party. Further, there is evidence that this communication did bear on her credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living and was clearly expected to be used for the purpose of serving as a factor in establishing her

eligibility for credit or insurance for her personal, family, or household uses – specifically a mortgage. Ultimately, the cases upon which Defendant relies recognize this, as well, and evaluate a credit reporting agency's statements that no report is available for reasonableness. *See Rumbough v. Comenity Capital Bank*, No. 16-cv-1305, slip op. at 8 (M.D. Fla. Nov. 27, 2017) (holding that credit reporting agency did not violate 1681e, 1681i, and 1681g by failing to provide credit reports for plaintiff "because credit reporting agency deleted all accounts on his credit report."); *Botti v. Trans Union LLC*, No. C 11-04519 SBA, 2012 WL 1595109, at *1-3 (N.D. Cal. May 4, 2012) (holding that it was not unreasonable under § 1681b for defendant credit reporting agency to place plaintiff's credit file in "permanent suppression status" following the theft of his identity and a lawsuit related to that fraud such that creditors could not obtain a report for him from defendant).

Having reported to even one potential creditor that Maria E was credit invisible, it is a question of fact as to whether Experian followed reasonable procedures to assure maximum possible accuracy in communicating that information.[5] The fact that

---

[5] Consumers without nationwide credit reporting agency credit records are referred to as "credit invisibles." The Consumer Financial Protection Bureau Office of Research, *Data Point: Credit Invisibles*, 4 (May 2015), http://files.consumerfinance.gov/f/201505_cfpb_data-point-credit-invisibles.pdf (last visited February 21, 2018).

Experian's computer system cannot accommodate a one letter last name does not excuse Experian's compliance with the FCRA. Experian argues that its decision to use that system is done in the name of maximum possible accuracy because there is too great a chance of confusion for misidentifying individual information when only one letter of a last name is used to search. This may be the case, but the Court cannot answer the question of whether it is reasonable to implement no means whatsoever to receive information or search its collection of information for individuals who have a one letter last name, no matter how rare that situation is.

In most cases and certainly in the instant matter, the reasonableness of a company's procedures presents factual questions not suitable for judgment as a matter of law. Here, a jury could conclude that it is unreasonable to have no means – whether part of the ordinary search algorithm or a separate procedure limited to those few individuals with one letter last names – to identify information related to an individual with a one letter last name.[6] *See Boggio v. USAA Fed. Sav. Bank*, 696 F.3d

---

[6] The question is of whether the means and methods of organizing, retrieving, and reporting information by Experian is unreasonable is not before the Court on Experian's Motion. Rather the Court has determined that it is not possible to determine that it is indisputably reasonable as Experian argues. Considering that Plaintiff will present evidence that the other national credit reporting agencies, the Veterans Administration, the Internal Revenue Service, and the Social Security Administration are capable of maintaining a record of Plaintiff's information using her legal name, "Maria E", and receiving information and returns, as well as providing reports, payments, and other materials, using her single letter surname, there is a great deal of evidence from which the jury can conclude that Experian's procedures are unreasonable.

611, 619 (6th Cir. 2012) (reversing summary judgment on reasonableness of FCRA compliance procedures); *Cortez v. Trans Union, LLC*, 617 F.3d 688, 709–10 (3d Cir. 2010) (explaining that "the reasonableness of a credit reporting agency's procedures is 'normally a question for trial unless the reasonableness or unreasonableness of the procedures is beyond question.'") (*quoting Sarver v. Experian Info. Solutions,* 390 F.3d 969, 971 (7th Cir. 2004)); *Nelski*, 86 Fed. App'x at 844 (holding that reasonableness of procedures under FCRA section 1681e(b) is "determined by reference to what a reasonably prudent person would do under the circumstances."). Other courts have required that a plaintiff must be able to "produce some evidence beyond a mere inaccuracy in order to demonstrate the failure to follow reasonable procedures; that the jury may infer the failure to follow reasonable procedures from the mere fact of an inaccuracy; or that upon demonstrating an inaccuracy, the burden shifts to the defendant to prove that reasonable procedures were followed." *Philbin v. Trans Union Corp.,* 101 F.3d 957, 965 (3d Cir. 1996). Plaintiff, in this case, could produce evidence at trial sufficient to meet any of the three standards.

## IV.

The Court also rejects Defendant's argument that Plaintiff's claims for humiliation and mental distress fail as a matter of

law. Section 1681o(a) provides that a consumer reporting agency that negligently fails to comply with the FCRA is liable for "any actual damages sustained by the consumer as a result of that failure . . ." "Actual damages" may include humiliation and mental distress. *Bach v. First Union Nat. Bank*, 149 F. App'x 354, 361 (6th Cir. 2005) (citing *Casella v. Equifax Credit Info. Servs*, 56 F.3d 469, 474 (2d Cir. 1995)). In federal causes of action, claims of emotional distress generally "must be supported by evidence of a genuine injury, such as evidence of the injured party's conduct and the observations of others." *Reed v. Experian Info. Sols., Inc.*, 321 F. Supp. 2d 1109, 1115 (D. Minn. 2004) (*citing Cousin v. Trans Union,* 246 F.3d 359, 371 (5th Cir.2001) and *quoting Carey v. Piphus,* 435 U.S. 247 (1978)).

The Court is equally unpersuaded by Defendant's argument that Plaintiff cannot recover damages for those instances where Plaintiff never actually applied for homeowners insurance or a mortgage and sought only quotes or preapprovals. True, she cannot show certain economic damages for a lost opportunity where she was merely deterred from applying and no application for credit was actually made and, subsequently, denied because damages would be too speculative. *See Reed*, 321 F. Supp. 2d at 1116; *Tinsley v. TRW Inc.*, 879 F. Supp. 550, 552 (D. Md. 1995) (finding that the plaintiff failed to show damages for a lost opportunity to

15

refinance a home because he never actually applied for a mortgage).
She may, nonetheless, be entitled to damages for the emotional
distress she suffered in connection with her efforts to have the
error in her Experian consumer file corrected. *See Sheffer v.
Experian,* No. Civ. A. 02-7407, 2003 WL 21710573, *2-3 (E.D.Pa.
July 24, 2003) (denying summary judgment to Trans Union where a
credit report noted that a living consumer was "deceased" on the
grounds that there was no evidence of actual damages and finding
that "[a]t the very least, Plaintiff may be entitled to damages
for the emotional distress he may have suffered in connection with
his efforts to correct the error in his Trans Union consumer file
and in obtaining credit from a jewelry store around the time he
was attempting to have the error corrected."); *Lawrence v. Trans
Union LLC*, 296 F. Supp.2d 582, 588-89 (E.D. Pa. 2003) (holding
that, in addition to damages for demonstrable loss of credit
opportunities, a plaintiff could recover damages for humiliation
and embarrassment where Trans Union reported a judgment that
Plaintiff obtained in her favor in a small claims lawsuit was, in
fact, an unpaid judgment against her).

Reviewing the materials submitted by the parties, there is
evidence from which a jury could reasonably conclude that Plaintiff
experienced humiliation and mental distress. Plaintiff and several
witnesses have stated in their deposition testimony that she
suffered or they observed her suffering from an altered mood and

anxiety and that she experienced headache and stomach ache as a result of the stress arising out of her interactions with Experian, both following her communications with them and while she looked at homes for sale knowing that Experian would not correct its file so that her legal name would appear on it such that she could qualify for a mortgage or other credit opportunities that required a report from Experian. These are not conclusory statements but reference a distinct period of time and particular situations in which Maria E was directly impacted by Experian's actions. The fact that she is not seeking damages for medical treatment because she did not seek medical treatment may go to Maria E's credibility or to the amount of damages for humiliation and mental distress, but it does not foreclose the opportunity to seek these damages from the jury.

## V.

The Court also declines to enter summary judgment in favor of Defendant with respect to Plaintiff's claim under § 1681i for failure to correct inaccuracies contained in her consumer file.[7]

> Looking at the entire statute, Congress chose
> to give different statutory definitions to the

---

[7] 15 U.S.C.A. § 1681i(a)(1)(A) requires an investigation of disputed information in a "consumer's file," which the statute terms a "reinvestigation," as follows:

> [I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed

terms "consumer report" and "file," and used the different terms in different subsections. *See United States v. Steele,* 147 F.3d 1316, 1318 (11th Cir. 1998) (en banc) ("[W]e must presume that Congress said what it meant and meant what it said."); *Iraola & CIA, SA v. Kimberly-Clark Corp.,* 232 F.3d 854, 859 (11th Cir. 2000) ("[W]hen Congress uses different language in similar sections, it intends different meanings."). A "consumer report" requires communication to a third party, while a "file" does not. *See Russello v. United States,* 464 U.S. 16, 23, 104 S.Ct. 296, 300, 78 L.Ed.2d 17 (1983) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally or purposely in the disparate inclusion or exclusion." (brackets and quotations omitted)). Thus, by its plain terms, § 1681i(a) does not require communication to a third party; it provides a consumer reporting agency violates that provision if a consumer notifies the agency there is inaccurate information contained in his *file* and the agency does not conduct a reasonable reinvestigation into the matter. A file is simply the information retained by a

---

information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

Then,

[i]f, after any reinvestigation under paragraph (1) of any information disputed by a consumer, an item of the information is found to be inaccurate or incomplete or cannot be verified, the consumer reporting agency shall--
**(i)** promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation; and
**(ii)** promptly notify the furnisher of that information that the information has been modified or deleted from the file of the consumer.

15 U.S.C. § 1681i(a)(5)(A).

> consumer reporting agency. Thus, we hold that
> the plain language of the FCRA contains no
> requirement that the disputed information be
> published to a third party in order for a
> consumer to recover actual damages under §
> 1681i(a).

*Collins v. Experian Info. Sols., Inc.,* 775 F.3d 1330, 1335 (11th

Cir.), *on reh'g sub nom. Collins v. Equable Ascent Fin., LLC*, 781

F.3d 1270 (11th Cir. 2015). As explained above, there is a question

of fact for the jury as to whether Experian conducted a reasonable

reinvestigation and responded to Plaintiff's challenge to the

accuracy of the items in the report associated with her other

identifying information, including past names and her social

security number, with respect to her legal name and whether it

included information transmitted to Experian under that name that

should be reported based on her recent credit history.

## VI.

The Court concludes, however, that summary judgment in favor

of Experian is appropriate on Plaintiff's claim under § 1681g,

which allows consumers to view the information contained in and

sources of information in their consumer credit file. A consumer

credit file is separate and distinct from a consumer credit

report.[8] 15 U.S.C. § 1681g(a)(1)-(3). Maria E's Amended Complaint

---

[8] For the purposes of the FCRA, "consumer" means "an individual." 15 U.S.C. §
1681a(c). "The term 'file', when used in connection with information on any
consumer, means all of the information on that consumer recorded and retained
by a consumer reporting agency regardless of how the information is stored."
*Id.* § 1681a(g).

does not aver that Defendant denied Plaintiff access to the information in the credit file that does exist for her. While there is evidence in the record that she requested the information from her file during a phone call to Experian on October, 20, 2016, and did not receive it, she did not aver that she was harmed by this action in her Amended Complaint, and the Court will consider such a claim no further.

## VII.

Finally, the Court concludes that summary judgment in favor of Experian with respect to Plaintiff's claim for punitive damages is not supported by the undisputed material facts. Defendant argues that it cannot be liable for punitive damages because its actions were not unreasonable and, by extension, not reckless in light of the fact "[a] consumer reporting agency is not required to create new files on consumers for whom it has no file, nor is it required to add new lines of information about new accounts not reflected in an existing file, because the [FCRA] section permits the consumer to dispute only the completeness or accuracy of particular items of information in the file." *Davis v. Equifax Information Services LLC*, 346 F. Supp. 2d 1164, 1171–72 (N.D. Ala. 2004) (holding that defendant credit reporting agency did not act unreasonably in violation of § 1681e(b) when it first deleted plaintiff's mortgage account information that could not be verified with mortgage company then added it again after receiving

a written verification of account from mortgage company over one year later) (quoting FTC Official Staff Commentary, § 611(3)). Maria E has not, however, claimed that Experian has failed to create a new file for someone who has no file. Experian concedes that it has a file for Plaintiff, associated with her social security number, and that the information does not accurately reflect her legal name. Plaintiff may hope that correcting her name in her file will result in Experian capturing and reporting any new lines of information about new accounts reported, but her claim ultimately turns on the inaccuracy of the information about her name in her file.

Since the reasonableness of Experian's actions is a question for the jury, there is no merit to Defendant's argument. Nor is this a situation where a "dearth of guidance and the less-than-pellucid statutory text" can be held responsible for Experian's actions or inactions with respect to the correction of Plaintiff's name in her file. *See Safeco*, 551 U.S. at 70. The question of whether Defendant knowingly and intentionally committed an act in conscious disregard for the rights of Maria E remains to be resolved as well. *Id*. at 69-71 (holding that a plaintiff must show that a defendant's act constituted reckless disregard of a requirement of the FCRA to recover punitive damages); *Swanson*, 2005 WL 1324887, at *5 ("To be found in willful noncompliance, a

defendant must have knowingly and intentionally committed an act in conscious disregard for the rights of others.").

**VIII.**

For all of the reasons stated above, the Court concludes that Plaintiff's claims under 15 U.S.C. §§ 1681e(b) and 1681i present issues to be tried and cannot be resolved as a matter of law on the facts before the Court. Plaintiff's claim under 15 U.S.C. § 1681g cannot withstand Defendant's motion as a matter of law, and it will be dismissed.

Accordingly, Defendant's Motion for Summary Judgment [DE 27] is **GRANTED IN PART** and **DENIED IN PART**.

This the 22nd day of February, 2018.



Signed By:

*Joseph M. Hood*

Senior U.S. District Judge