UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT LEXINGTON

| | |
|---|---|
| MARIA E, ) | |
| ) | |
| Plaintiff, ) | Civil No. 5:17-cv-00-98-JMH |
| ) | |
| V. ) | |
| ) | |
| EXPERIAN INFORMATION ) | **MEMORANDUM OPINION & ORDER** |
| SOLUTIONS, INC., ) | |
| ) | |
| Defendant. ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court upon Defendant's Motion for Reconsideration [DE 61] of this Court's Memorandum Opinion and Order [DE 59], dated February 22, 2018. The Court has had the benefit of argument from both parties at a hearing on February 26, 2018, as well as Plaintiff's Response[1] [DE 64], and concludes that reconsideration is appropriate. The Court further concludes that summary judgment in favor of Defendant is appropriate or the reasons which follow. The Court's Order of February 22, 2018, will be withdrawn, and judgment will be entered in favor of Defendant by separate order.

**I.**

Experian is a consumer credit reporting agency under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681(p), serving as a

---
[1] The Court will grant Defendant's Motion for Leave to Seal a Document [DE 63].

1

conduit of information relevant to decisions regarding consumer credit and related matters. Essentially, Experian gathers credit information originated by others and makes that information available to parties engaged in credit related transactions. It stores, retrieves, and furnishes data under the auspices of the FCRA. Credit grantors report trade lines consisting of credit account information, including account number, account status, and balance information. Credit grantors also report consumer identifying information associated with the trade line. After Experian receives credit data but before adding it to a credit file, Experian reviews the information in various ways in its efforts to ensure that only accurate information will be reported for a given consumer.

Experian has extensive procedures for assuring the maximum possible accuracy of reported credit information. These procedures include: (1) verifying the accuracy of a consumer's identifying information; (2) working with credit grantors to ensure they supply the most complete and accurate data possible; (3) subjecting all incoming data to numerous systems and checks designed to prevent errors; (4) continually reviewing and refining Experian's computer systems in an ongoing effort to assure maximum possible accuracy of information Experian reports; and (5) working with consumers to proactively prevent errors in consumer credit reports.

Experian's credit reporting system does not store information on consumers in complete or assembled credit reports. Rather, the credit report is assembled at the time of an inquiry, using the identifying information provided by the inquiring party and comparing that information to the data in Experian's database. Experian has devised a system which accounts for the sometimes inconsistent manner in which consumers and data furnishers use or report identifying information (including parts of a name, typographical errors, etc.) by requiring a minimum of two letters for a consumer's surname length. Experian believes that this ensures sufficient information to provide a correct match when it receives an inquiry.

Experian's system did not, however, anticipate Plaintiff. She was born Maria Kalla and has had various married names over the years, including Moore and Morand, but changed her legal name to "Maria E." in 1992 when she divorced and, again, to "Maria E" on July 20, 2016. Over the years she has used her married names with respect to obtaining credit, among other purposes, and has periodically requested credit reports under those names. Most recently, she has used her legal name, "Maria E", for credit applications.

Plaintiff first contacted Experian to dispute the reporting (or lack of reporting) using her legal name in November 2008. In

a letter dated October 15, 2008, Plaintiff informed Experian that her legal name was "Maria E" and requested that her credit reports reflect that. Experian considered her request and responded, on November 17, 2008, that its database "does not support the use of a single name or a single initial for a surname."

Then, in 2016, Plaintiff began the process of establishing a good credit history so that she could purchase a home. Plaintiff had saved $10,000 and hoped to obtain a VA loan to finance the balance of the cost for a house. Recognizing that none of the three national credit bureaus were reporting credit information for her using her legal name, she set about to correct that.

For example, Plaintiff applied for a $1,000 installment loan through Forcht Bank in spring 2016 in order to establish a positive payment history, and her application was denied when the bank was unable to pull a credit report for Plaintiff through CBCInnovis. Plaintiff then obtained the loan, without submitting a second application after Trans Union and Equifax, the other major credit reporting agencies, began providing reports for her using her name, "Maria E" in the months that followed.[2]

---

[2] Plaintiff had other issues in her effort to establish credit, not all of which can be directly linked to Experian on the evidence presented to this Court but which reveal the uphill climb she was making toward obtaining credit and improving her credit history. For example, she applied for a mortgage with Veteran's United Mortgage Company in April 2016, through an online resource called Lending Tree. At that time, she did not have revolving credit and cannot recall whether this lender made its decision on the basis of an Experian credit report or its inability to pull an Experian credit report for Plaintiff. She

Although Plaintiff was able to secure corrections to her name in her file from TransUnion and Equifax, she was unable to do so with Experian, notwithstanding the fact that there is but one social security number associated with Maria E's credit file as it exists under her former names.

In a July 4, 2016, letter she advised Experian that her legal name was "Maria E" and requested that Experian provide credit reports under that name. Experian wrote back, on July 19, 2016, advising her that its "database does not support the use of a single name or a single initial for a surname." Plaintiff wrote again on September 29, 2016, and October 7, 2016, reiterating her request. Experian responded both times that its "database does not support the use of a single name or a single initial for a surname." Plaintiff understood that Experian could not, with the system it was using, accommodate her request.

Plaintiff contacted the Consumer Financial Protection Bureau in October 2016. Experian responded to the complaint made through that process by responding that its "database does not support the

also applied for a Meijer department store credit card in 2016 and was unable to open an account because she had failed to provide some personal information required under the USA PATRIOT Act in order to open the account. There was also a delay in approval of the $1,000 installment loan from Forcht Bank in spring 2016 because of credit reporting issues, but the evidence available to the Court on the present motion shows only that Forcht Bank requested a report through CBCInnovis – not Experian. Plaintiff would need to provide evidence showing CBCInnovis's connection to Experian and Experian's actions with respect to any reporting in that instance for such evidence to be relevant to her claims against Experian.

use of a single initial for a surname because single initial surnames do not provide sufficient identifying information to ensure a correct match" and that, because of its search and match logic, "[t]he request by the consumer to allow the display of a single character surname is not simply a formatting change," and explained that "[c]hanging the search and match logic to allow for single initial surnames could potentially have serious adverse effects on the credit reports of large numbers of other consumers because it would allow credit items to be matched to consumer files with insufficient identifying information."[3]

In December 2016, Plaintiff sought a mortgage to purchase a new home through Veterans United Home Loan through mortgage broker Pat O'Laughlin, but she was advised that she would not be able to obtain financing because O'Laughlin was unable to obtain a tri-merge credit report for her because there was no report available from Experian.[4] After his request for a credit report for "Maria

---

[3] Plaintiff also called Experian on several occasions disputing other information contained in her file and asking that her legal name be included. Each time, the Experian agent made it clear that "[s]he was not going to be able to get a credit report in [her] name." Plaintiff faced other difficulties in her interactions with Experian, including an allegation that Experian failed to send her information on her credit file when she contacted Experian on October, 20, 2016. She has affied that she requested a copy of her credit file disclosure during that call. Experian's record of that call does not indicate the topic of the discussion during that call but does not include a "CDI sent" note which its representative represented would indicate that a disclosure was requested and, the Court presumes, provided.

[4] Around the same time, Maria E called USAA to see what her insurance cost for a home would be so that she could establish her budget. Plaintiff declares that the USAA representative indicated that USAA uses Experian as their source for credit reports on insurance applications; that it could not obtain a report for

E" was unsuccessful, O'Laughlin reached out to Experian to try to resolve the situation and, ultimately, made a request using her former name, Marian Morand, with Plaintiff's permission and per Experian's suggestion. Unfortunately, the report obtained using her former name did not include Plaintiff's more recently established credit history through two active, revolving accounts at USAA and an open and active installment account at Forcht Bank.[5]

O'Laughlin observed Plaintiff's frustration, humiliation, and embarrassment over her inability to obtain credit because she could not resolve the situation with Experian. Friends and acquaintances, including Wallace Barnes, Gregory Manley, John Grigsby, and John Huber, observed Plaintiff as she looked for a home to purchase and observed the physical and emotional impact that the intractable situation with Experian has had on her, corroborating her own claims that she became withdrawn; experienced frustration, tearfulness, and feelings of depression; and experienced and complained of headaches and stomach pain due to her experience with Experian.

---

"Maria E"; and that an application would be denied without a report. This is hearsay and, thus, inadmissible in this instance. Fed. R. Evid. 801 & 802.

[5] Experian's credit file for Plaintiff (using her former names) contains information from the past, including a closed, nine-year old Target National Bank account reported as potentially "negative." Plaintiff has provided no evidence that the entry for this account on her report contains any error.

**II.**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Initially, the burden is on the moving party to conclusively show no genuine issue of material fact exists. *Leary v. Daeschner,* 349 F.3d 888, 897 (6th Cir. 2003), and the Court must view the evidence and draw all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587-88 (1986). However, the nonmoving party is not entitled to a trial merely on the basis of allegations, but must come forward with some significant probative evidence to support its claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Id.* at 323.

The Court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question, but does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986); *Weaver v. Shadoan,* 340 F.3d 398, 405 (6th Cir. 2003). The standard for summary judgment mirrors the

standard for directed verdict. *Anderson,* 477 U.S. at 250. The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. There must be some probative evidence from which the jury could reasonably find for the nonmoving party. If the Court concludes a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Id.; Lansing Dairy. Inc. v. Espy,* 39 F.3d 1339, 1347 (6th Cir. 1994).

### III.

The FCRA creates a private cause of action, "[w]henever a consumer reporting agency prepares a consumer report" if it fails to "follow reasonable procedures to assure maximum possible accuracy" in preparing the consumer report. 15 U.S.C. § 1681e(b). A consumer report is defined, in relevant part, as:

> …*any* written, oral, or other communication of *any* information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for— (A) credit or insurance to be used primarily for personal, family, or household purposes....

15 U.S.C. § 1681a(d)(1).

Thus, to succeed, Plaintiff must show that "(1) Experian reported inaccurate information about her; (2) Experian either negligently or willfully failed to follow reasonable procedures to assure maximum possible accuracy of the information about her; (3) she was injured; and (4) Experian's conduct was the proximate cause of her injury." *McComas v. Experian Info. Sols., Inc.*, No. 14-371, 2015 WL 4603233, at *3 (E.D. Ky. July 29, 2015) (citing *Nelski v. Trans Union, LLC*, 86 F. App'x 840, 844 (6th Cir. 2004)); *see also Swanson v. Cent. Bank & Trust Co.*, No. 5:03-255-JMH, 2005 WL 1324887, at *2 (E.D. Ky. June 3, 2005); *Smith v. LexisNexis Screening Sols., Inc.*, 76 F. Supp. 3d 651, 656 (E.D. Mich. 2014), *aff'd in part, rev'd in part*, 837 F.3d 604 (6th Cir. 2016)

Experian argues that Plaintiff cannot state a claim under §1681e because she cannot simultaneously claim that no report is available and aver that Experian actually "prepared" or "provided" a consumer report for a third party which triggered its obligation to follow reasonable procedures. It is true that, "without a consumer report, there is no duty under the [FCRA] to follow reasonable procedures," *Smith v. First Nat'l Bank of Atlanta*, 837 F.2d 1575, 1578 (11th Cir. 1988), and it is equally true that "[t]here is no consumer report unless there is a communication...for the purpose of serving as a factor in establishing the consumer's eligibility for credit or other statutorily enumerated purposes; i.e., there cannot be a consumer

report without disclosure to a third party." *Wantz v. Experian Info. Sols.*, 386 F.3d 829, 833–34 (7th Cir. 2004), *abrogated on other grounds by Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007).

In *Bickley v. Dish Network, LLC*, 75 F.3d 724, 729-30 (6th Cir. 2014), the United States Court of Appeals for the Sixth Circuit affirmed the lower court's decision that a "Declined No Hit" response to a credit inquiry from a creditor was not a "consumer report" for the purposes of the FCRA and could not serve as the basis for a claim under 15 U.S.C. § 1681e(b). As the district court explained in more detail, a "Declined No Hit" response did not constitute a consumer report under the FCRA because the response indicated that the consumer reporting agencies did not have a confident match between the name and the social security number provided and, thus, did not bear on "the individual's creditworthiness or financial character." *Bickley v. Dish Network, LLC*, Civil Action No. 3:10-cv-00678-H, 2012 WL 5397754, *4 (W.D.Ky. Nov. 2, 2012).

Defendant argues that, in keeping with *Bickley*, this Court must conclude that the "no report" communications made to O'Laughlin and others by Experian in response to request for information about "Maria E" are not consumer reports. Plaintiff argues that there are, in fact, examples of credit reports issued

11

to a number of parties, including Equifax Mortgage Service on April 21, 2016, Credco/Quicken Loans on April 11, 2016, Settlement One on April 10, 2016, and Credit Plus on December 20, 2016. [*See* Plaintiff's Trial Exhibit 116, 141.] She urges the Court to rely on the testimony of Anna Simmons, Experian's corporate representative, who testified in her deposition that subscribers listed in the inquiry section of the Administrative Report received Plaintiff's consumer report and that, with respect to each request by a subscriber, "Experian returned some type of report, whatever was requested in response to each inquiry." [DE 64, Pl. Response to Motion to Reconsider at 2 (quoting Simmons Dep. at 37, ll. 15-18). No copy of the Simmons deposition is contained in the record of this matter, but it is of no matter.

The problem is that the contents of any reports or communications made as a result of those inquiries are not evidence before the Court. Evidence that inquiries concerning Plaintiff's information were made to Experian does not make it more likely than not that Defendant provided a credit report to the requesting creditor, which is the fact of consequence in this instance. *See* Fed. R. Evid. 401 and 402. Nor does it make it more likely than not that the information returned had any bearing on her credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living. *Id*. Since

there is no evidence of that anything more than a "no report" response was contained in any communications to third parties when a report was requested using "Maria E" or the contents of any report obtained using one of her former legal names, the Plaintiff cannot establish that a potentially actionable consumer report was made and, even then, she would still have to establish that the contents were erroneous. In the absence of that evidence, her claim cannot survive summary judgment.

Plaintiff throws the words "true," "false," "inaccurate," and even "credit report" around somewhat loosely. Plaintiff insists that it is meaningful and unlawful under § 1681e(b) that Defendant "directs creditors that[,] in order to obtain a consumer report on plaintiff, they must use the false name Maria Morand." [Pl. Resp. to Motion to Reconsider at 5 (original emphasis omitted) (citing Decl. of Pat O'Laughlin, ¶ 6 ("Experian recommended that we use a name other than Maria E to obtain some credit history.")]. She argues that it is unlawful for Experian to sell a consumer report for plaintiff to lenders but to insist that, in order to do so, the lender must use plaintiff's former name, which results in Plaintiff's words in an "inaccurate, unusable consumer report."

Plaintiff concedes that Defendant cannot match her current legal name, "Maria E", to any data in its files and that it cannot do so because its software requires data entry of more than one

13

letter for a surname in order to avoid erroneous returns. No one disputes that this is the case, but these facts, without more, do not reveal any unlawful action. Without something more than this, the Court and the jury would be left to conclude that Maria E may have discovered that Experian is dedicated to accuracy and has found a robust way to implement that dedication through the use of particular software, that Experian is foolishly clinging to unimaginative software that does not account for and record information or make returns on requests for information using her current, legal, single letter last name, or that Experian is stubborn in refusing to give way to her demands. Without more, that is not unlawful.[6]

## IV.

This decision with respect to Plaintiff's § 1681e(b) claim impacts her § 1681i(a) claim as well.[7] Plaintiff argues that it

---

[6] The Court observes that many of the cases upon which Defendant relies in support of its Motion for Summary Judgment can be read as evaluating a credit reporting agency's statements that no report is available for reasonableness as a practical matter. *See Rumbough v. Comenity Capital Bank*, No. 16-cv-1305, slip op. at 8 (M.D. Fla. Nov. 27, 2017) (holding that credit reporting agency did not violate 1681e, 1681i, and 1681g by failing to provide credit reports for plaintiff "because credit reporting agency deleted all accounts on his credit report."); *Botti v. Trans Union LLC*, No. C 11-04519 SBA, 2012 WL 1595109, at *1–3 (N.D. Cal. May 4, 2012) (holding that it was not unreasonable under § 1681b for defendant credit reporting agency to place plaintiff's credit file in "permanent suppression status" following the theft of his identity and a lawsuit related to that fraud such that creditors could not obtain a report for him from defendant). In light of Sixth Circuit case law, as discussed above, the Court need not engage in this analysis.

[7] 15 U.S.C.A. § 1681i(a)(1)(A) requires an investigation of disputed information in a "consumer's file," which the statute terms a "reinvestigation," as follows:

14

is not impacted at all because §1681i does not require a consumer report, i.e., a communication to a third party, to trigger Defendant's duty to conduct a reinvestigation. While this is true, *see Collins v. Experian Information Solutions, Inc.*, 775 F.3d 1330, 1335 (11th Cir. 2015), it does not save her claim. Rather, the Court is persuaded by Defendant's argument that (1) there was no inaccuracy revealed because she does not present evidence that the items in her consumer information file were reported to Experian under the name Maria E, implying that they were reported to and recorded by Experian using the name with which they were obtained, and (2) Defendant satisfied its §1681i obligation when it

---

> [I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

Then,
> [i]f, after any reinvestigation under paragraph (1) of any information disputed by a consumer, an item of the information is found to be inaccurate or incomplete or cannot be verified, the consumer reporting agency shall--
> **(i)** promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation; and
> **(ii)** promptly notify the furnisher of that information that the information has been modified or deleted from the file of the consumer.

15 U.S.C. § 1681i(a)(5)(A).

determined and explained to her that it could not add her new legal last name when requested because its system would not accommodate a single letter last name in order to secure maximum accuracy of any returns based on the information contained in the file.

Plaintiff argues that Experian owed her more than a written account of the result of her inquiry and that Experian should have done more. Maybe that would be the case with something more, but there is no evidence in this record upon which a jury might determine that its reinvestigation was unreasonable. The FCRA is silent on what means credit reporting agencies must use to maintain information and ensure the maximum possible accuracy for reports made from its data files upon requests by creditors. Ultimately, that decision is in the discretion of the credit reporting agency and, by extension, market forces. In the absence of some further Congressional statement or proof that the reports produced using a system are, in fact, inaccurate and left uncorrected, the Court presumes that subscriptions and requests by creditors to any credit reporting agency will dwindle if the credit reporting agency's means of returning information about consumers is faulty and does not provide the information that creditors need to make informed decisions.

In the same way that a consumer cannot force his or her local grocery store to obtain a license and organize and implement a system for stocking beer, cigarettes, or even something as unlikely

as firearms, consumers cannot force a credit reporting agency to do what she wants because she wants it. Neither Maria E nor any other plaintiff can force a credit reporting agency to subscribe to a particular organizational principle or software operations for the data it collects that the credit reporting agency does not wish to implement even if there is some showing that the existing system unreasonably produces inaccurate reporting. The choice of what system to implement would be left to the credit reporting agency. In this case, there being no inaccuracies identified, the Court need consider this line of inquiry no further.

**V.**

Finally, the Court concludes that summary judgment in favor of Experian is appropriate on Plaintiff's claim under § 1681g, which allows consumers to view the information contained in and sources of information in their consumer credit file. A consumer credit file is separate and distinct from a consumer credit report.[8] 15 U.S.C. § 1681g(a)(1)-(3). Maria E's Amended Complaint does not aver that Defendant denied Plaintiff access to the information in the credit file that does exist for her. While there is evidence in the record that she requested the information from

---

[8] For the purposes of the FCRA, "consumer" means "an individual." 15 U.S.C. § 1681a(c). "The term 'file', when used in connection with information on any consumer, means all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored." *Id*. § 1681a(g).

her file during a phone call to Experian on October, 20, 2016, and did not receive it, she did not aver that she was harmed by this action in her Amended Complaint, and the Court will consider such a claim no further.

**VI.**

For all of the reasons stated above, the Court concludes that Plaintiff's claims under 15 U.S.C. §§ 1681e(b), 1681i, and 1681g cannot withstand Defendant's motion as a matter of law, and they will be dismissed.

Accordingly, **IT IS ORDERED:**

(1) That Defendant's Motion for Leave to Seal a Document [DE 63] is **GRANTED**;

(2) That Defendant's Motion for Reconsideration [DE 61] is **GRANTED**;

(3) That, upon reconsideration, the Court's Memorandum Opinion and Order [DE 59], dated February 22, 2018, is **WITHDRAWN**; and

(4) That Defendant's Motion for Summary Judgment [DE 27] is **GRANTED.**

This the 27th day of February, 2018.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge